IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JARED M. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-cv-1468-RJD |
| ) | |
| PERCY MYERS, SABRINA STEVENS, ) | |
| TAMMY STEVENS, REYNAL CALDWELL, ) | |
| and DANIEL MONTI, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Jared Smith, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Vienna Correctional Center ("Vienna"). Plaintiff is currently incarcerated at Shawnee Correctional Center. Plaintiff alleges he was previously diagnosed with diminished lung capacity and, in October 2020, he contracted Covid-19. Since contracting Covid-19, a recent x-ray showed granuloma in the base of Plaintiff's lungs. Plaintiff asserts he suffers from chest pains and difficulty breathing, but Dr. Percy Myers, Nurse Practitioner Sabrina Stevens, and Healthcare Unit Administrator Tammy Stevens have denied his requests to see a pulmonologist or other specialist, as well as his request for an MRI.

Plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915A, and he was allowed to proceed on the following claim:

Count One:   Eighth Amendment deliberate indifferent claim against Percy Meyers, Sabrina Stevens, Tammy Stevens, and Reynal Caldwell for failing to send Smith for outside care for his lung condition.

The Warden of Shawnee, Daniel Monti, was added as a defendant only in his official capacity for the purpose of carrying out any injunctive relief that may be ordered.

In screening the complaint, District Judge Rosenstengel found that Plaintiff has accumulated three "strikes" for purposes of Section 1915(g), and cannot proceed IFP unless he is under imminent danger of serious physical injury. Judge Rosenstengel discussed this requirement and found that it was met insofar as if Plaintiff's claims prove to be true, his health condition could be considered an imminent danger. Judge Rosenstengel noted that if Plaintiff's allegations of imminent physical harm prove to be untrue, then he must pay the whole filing fee promptly.

Judge Rosenstengel also considered the pending Emergency Motion Requesting Injunctive Relief filed by Plaintiff (Doc. 3). Judge Rosenstengel determined that although Plaintiff labeled his motion as an "emergency," Plaintiff had not demonstrated that his condition was so dire that an injunction should enter prior to the Defendants being served. As such, Judge Rosenstengel ordered service on Defendants and ordered them to respond to the motion. Plaintiff's Emergency Motion Requesting Injunctive Relief is now before the Court, and for the reasons set forth below, it is **DENIED**.

## Factual Background

In his Motion, Plaintiff asserts he is being denied adequate medical care to address his continued complaints of chest and lung pain. Plaintiff reiterates the issues set forth in his complaint, including Defendants' refusal to send him to an off-site medical facility for an MRI or CT scan to determine the cause of his condition. Plaintiff asserts he has a "great" likelihood of success on the merits because Defendants have, and continue to deny and delay proper medical care. Plaintiff asks that Defendants be ordered to take Plaintiff to a suitable doctor or specialist,

and then carry out the doctor/specialist's orders.

Defendants Tammy Stevens and Daniel Monti filed a response to Plaintiff's motion on February 10, 2022 (Doc. 41). In their response, Stevens and Monti assert Plaintiff is not likely to succeed on the merits of his claim because he cannot show substantial harm has or will result from Defendants' actions. Defendants claim Plaintiff has received numerous tests, including x-rays and multiple EKGs, that do not show anything concerning. Defendants also assert Plaintiff has failed to provide evidence that he would suffer irreparable harm if his request for preliminary injunctive relief is denied. Defendants remark that Plaintiff has had ample access to both medical and mental health care and no medical professional has noted anything abnormal about any of his tests or the presence or evidence of a granuloma or any other serious medical condition related to Plaintiff's heart, lungs, or reported chest pain.

Defendants Percy Myers, Sabrina Stevens, and Reynal Caldwell also responded to Plaintiff's motion (Doc. 47). Defendants explain Plaintiff developed a granuloma subsequent to contracting COVID-19. Defendants assert that a July 6, 2021 chest x-ray revealed Plaintiff's granuloma showed no abnormalities and, as such, Plaintiff did not require additional treatment or testing, including any outside care. Defendants explain Plaintiff had a conversation with Dr. Myers and two conversations with NP Stevens where he was informed everything was normal and no outside care was needed.

The record before the Court, including Plaintiff's medical records[1] and testimony provided at the hearing, establishes Plaintiff received the following medical care in response to his

---

[1] Defendants attached 345 pages of Plaintiff's medical records as an exhibit to their responses (*see* Docs. 42, 47-1). However, Defendants' reliance on the records is limited and the Court only cites those portions of the records relied on by Defendants.

complaints of chest pain.

Plaintiff testified at the hearing on his motion for preliminary injunction that in 2019 he had a chest x-ray that revealed diminished lung volumes. Plaintiff testified that in October 2020, he contracted COVID-19. Since contracting COVID-19, Plaintiff testified he has suffered from intermittent chest pain and complained about the same (*see* Doc. 47-1 at 29, 32-33, 36, 40-42, 61, 65-66). Plaintiff had a chest x-ray taken on July 6, 2021 (*see* Doc. 47-1 at 56, 65). Dr. Percy Meyers testified the x-ray revealed a small granuloma but was otherwise unremarkable and showed no issue with lung volume. Dr. Myers indicated there was no scarring in the lungs and Plaintiff is not considered a COVID-19 "long hauler." Dr. Myers explained that granulomas appear in response to inflammation or infection, among other causes, and is indicative of an immune response. Dr. Myers testified granulomas normally do not require treatment and are asymptomatic. Dr. Myers also testified Plaintiff underwent an esophagogastroduodenoscopy (EGD) in September 2021 to ensure Plaintiff was not experiencing reflux that was causing his pain. The EGD was normal.

Dr. Myers further testified that Plaintiff presented with no other clinical symptoms and his heart and lung sounds have always been clear, his lung saturation has always been good, and his lab tests, chest x-ray, and EGD were all normal. Dr. Myers testified there is nothing to suggest the need for an MRI or an outside specialist. Indeed, Dr. Myers testified that the clinical findings have not matched Plaintiff's complaints of pain.

Plaintiff testified at the hearing that he continues to have chest pain, but it is not as aggressive as it once was, and he has not seen a doctor since he was transferred to Shawnee Correctional Center. Following the hearing, however, Plaintiff filed a supplement regarding his

request for injunctive relief wherein he asserts he experienced severe chest pain on March 14, 2022, and was seen briefly by Dr. Caldwell, but has not otherwise been examined (Doc. 49). Plaintiff asserts he is experiencing pain every day so he claims whatever is "wrong" has gotten worse.

## Discussion

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that Plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). Plaintiff has the burden of demonstrating: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012). As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). If Plaintiff meets his burden, the Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.* In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties,

their officers or agents, or persons in active concert with the parties or their agents.

Plaintiff seeks a preliminary injunction to address his claims of chest and lung pain. Although the Court is mindful of the discomfort associated with said pain and concerns related to the same, the undersigned finds that Plaintiff has failed to meet his threshold burden for a preliminary injunction. First, it is not clear that Plaintiff will suffer imminent, irreparable harm absent injunctive relief. According to Plaintiff's medical records and the testimony provided at the hearing, Plaintiff's medical issues are being addressed and evaluated by various medical providers. Moreover, there is no indication that his condition requires more immediate, intensive treatment to prevent irreparable harm.

Further, based on the evidence now before the Court, Plaintiff has not established that he is likely to succeed on the merits of his claim at this time.[2] The underlying case states a claim for deliberate indifference to serious medical needs against the named Defendants. Accordingly, to prevail on his claim, Plaintiff must show that his medical condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). In this case, it appears Plaintiff may suffer from a serious medical condition, as Plaintiff requires regular evaluation by medical personnel due to his complaints of pain. *See Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008). However, the evidence in this case does not support a finding that Defendants have acted with a sufficiently culpable state of mind—namely, deliberate indifference.

"The infliction of suffering on prisoners can be found to violate the Eighth Amendment

---

[2] Such a conclusion is not a judgment as to whether Plaintiff may ultimately prevail in this lawsuit.

Page **6** of **9**

only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985).  Negligence, gross negligence, or even "recklessness," as that term is used in tort cases, is not enough.  *Id.* at 653.  Put another way, the plaintiff must demonstrate that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the official actually drew that inference.  *Greeno*, 414 F.3d at 653.  "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'"  *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

Further, the Eighth Amendment does not require that prisoners receive "unqualified access to health care."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care").  The Seventh Circuit has recognized that "[t]here is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field."  *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).  Moreover, the Seventh Circuit recognizes that treatment decisions that necessarily require medical judgment, such as whether one course of treatment is preferable to another, are beyond the Eighth Amendment's purview.  *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (citation and quotation omitted).

The evidence before the Court establishes that Plaintiff has received regular evaluation and tests related to his complaints of chest and lung pain, including x-rays, EKGs, physical examinations, lab testing, and an EGD.  Although Plaintiff is understandably frustrated with his medical condition, the evidence does not support a finding at this time that Defendants have

disregarded a substantial risk to his health. Rather, the evidence tends to support a finding that Plaintiff has received sufficient evaluation and treatment. For these reasons, the Court finds Plaintiff has failed to meet his threshold burden in demonstrating entitlement to a preliminary injunction.

## Conclusion

Based on the foregoing, Plaintiff's Emergency Motion Requesting Injunctive Relief (Doc. 3), which the Court construes as a motion for preliminary injunction under Federal Rule of Civil Procedure 65, is **DENIED**.

At this juncture, the Court must revisit Plaintiff's *in forma pauperis* status. As previously discussed by District Judge Rosenstengel in the Court's screening order, because Plaintiff has had three or more cases dismissed as frivolous, he could not continue with this case without prepaying the entire filing fee unless he was found to be in imminent danger. 28 U.S.C. § 1915(g). In her discussion, Judge Rosenstengel wrote:

> [B]ased only on [Plaintiff's] self-reported condition and care in his Complaint, it appears, at least at this time, that [Plaintiff] *could* be facing a genuine emergency. Thus, the Court will allow [Plaintiff] to proceed *in forma pauperis* under the "imminent danger" exception to the "three strikes" rule, at least *preliminarily*. If [Plaintiff]'s allegations of imminent physical harm prove to be untrue, then he must pay the whole filing fee promptly. *See Sanders v. Melvin*, 873 F.3d 957, 961 (7th Cir. 2017). And if it turns out that he has lied in an effort to manipulate the Court, the case may be dismissed with prejudice as a sanction even if [Plaintiff] pays the full $400 filing fee. *Id.*

(Doc. 7 at 4-5).

In this instance, the record shows that prison staff and Plaintiff's medical providers have taken Plaintiff's complaints seriously, ensured he received tests to evaluate his symptoms, and concluded there is nothing wrong with Plaintiff related to his complaints of chest or lung pain that

requires further treatment. In other words, there is no indication Plaintiff's medical problems suggest he was in imminent danger of serious physical harm at the time he filed this lawsuit. As such, Plaintiff is **ORDERED** to **SHOW CAUSE** as to why his *in forma pauperis* status should not be revoked. Plaintiff's Show Cause response is due by **April 13, 2022**. Plaintiff is **ADVISED** that if he is unable to satisfactorily address the Court's Show Cause Order, his *in forma pauperis* status will be revoked, and he will have to pay the remainder of the $400 filing fee he owes for this case (currently $380.54) or it will be dismissed.

**DATED: March 30, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**